OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | |
|---|---|
| OPINION | : |
| | :    No. 89-701 |
| of | : |
| | :    <u>JANUARY 24, 1990</u> |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| RODNEY O. LILYQUIST | : |
| Deputy Attorney General | : |
| | : |

THE STATE BOARD OF CORRECTIONS has requested an opinion on the following question:

Does a state trial court have the authority to direct the placement of a person convicted of a crime into in a private work furlough facility that is being operated without a contract with the county?

CONCLUSION

A state trial court does not have the authority to direct the placement of a person convicted of a crime into a private work furlough facility that is being operated without a contract with the county.

ANALYSIS

In 1957 the Legislature enacted the Cobey Work Furlough Law (Stats. 1957, ch. 1580, § 1) by adding section 1208 to the Penal Code.[1] Section 1208 authorizes the board of supervisors in each county to determine whether a work furlough program is feasible in the county. The board then designates a "work furlough administrator" who is responsible for administering the program and who negotiates a contract with each facility. The statute is detailed and specific concerning a variety of legislative concerns such as wage rates, work related injuries, emergency releases, writs of execution upon earnings, employer-employee labor disputes, personnel training standards, building standards, and inspection of the facilities by the Board of Corrections.

---

[1] All references hereafter to the Penal Code are by section number only.

The question presented for analysis is whether a trial court judge may direct the placement of a person convicted of a crime into a private work furlough facility that is not being operated under the terms of section 1208. We conclude that a court has no authority to do so.

Section 12 states:

"The several sections of this code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence, to determine and impose the punishment prescribed."

In *People* v. *Lara* (1984) 155 Cal.App.3d 570, 574, the court stated:

"Penal Code section 12 imposes a duty upon the sentencing court to impose the punishment prescribed by law. (*In re Sandel* (1966) 64 Cal.App.2d 412, 415.) A sentencing court has no discretion to deviate from the punishment prescribed by statute. (See, e.g., *Sandel, supra*, at p. 414; *People* v. *Thomas* (1976) 65 Cal.App.3d 854, 858; *People* v. *Browning* (1975) 45 Cal.App.3d 125, 145; *People* v. *Cheffen* (1969) 2 Cal.App.3d 638, 641.)"

Accordingly we must look for statutory[2] authority for a trial court to direct placement of a person convicted of a crime into a private work furlough facility.

Section 1208 does not provide such authority. The only authorization it gives to a trial court is to prohibit the placement of a person in a work furlough facility. "[T]he work furlough administrator may . . . direct that the person [be employed] unless the court at the time of sentencing or committing has ordered that the person not be granted work furloughs." (§ 1208, subd. (a).) Except for this "veto" authority of the trial court, the work furlough administrator[3] has control over the placement of persons into a work furlough facility under the terms of section 1208. (See *In re Thomas* (1984) 161 Cal.App.3d 721, 727-729; 63 Ops.Cal.Atty.Gen. 33, 34-36 (1980).) In pertinent part, the statute provides:

"(a) . . . The work furlough administrator may, with the approval of the board of supervisors, enter into contracts with appropriate public or nonprofit private agencies or private entities to provide a facility and services for the housing, sustenance, counseling, supervision, and related services for inmates eligible for work furlough. . . . The sheriff or director of the county department of corrections, as the case may be, is authorized to transfer custody of prisoners to the work furlough administrator to be confined in a facility for the period during which they are in the work furlough program.

---

[2] The only constitutional provision of relevance to our inquiry is section 5 of article XIV ["The labor of convicts shall not be let out by contract to any person, co-partnership, company or corporation . . . ."]. This constitutional prohibition has no application here, since in a work furlough program the pertinent contract is between the employer and the prisoner. (63 Ops.Cal.Atty.Gen. 33, 36 (1980); see *Pitts* v. *Reagan* (1971) 14 Cal.App.3d 112, 116-119.)

[3] The board of supervisors may choose between "the sheriff, the probation officer, the director of the county department of corrections, or the superintendent of a county industrial farm or industrial road camp in the county" or any combination of these public officials as the work furlough administrator. (§ 1208, subd. (a).)

"All privately operated work furlough facilities and programs used for the detention of persons <u>sentenced into the custody of the sheriff, the director of a county department of corrections, or the chief probation officer</u>, shall be under the jurisdiction of, and subject to the terms of a contract entered into with, the work furlough administrator. . . . Failure to comply with the appropriate health, safety, and fire laws or minimum jail standards adopted by the board may be cause for termination of the contract. Upon discovery of a failure to comply with these requirements, the work furlough administrator shall notify the privately operated program director that the contract may be canceled if the specified deficiencies are not corrected within 60 days.

"  . . . . . . . . . . . . . . . . . . . . . .

"(b) When a person is convicted of a misdemeanor and <u>sentenced to the county jail, or is imprisoned in the county jail for nonpayment of a fine, for contempt, or as a condition of probation for any criminal offense</u>, the work furlough administrator may, if he or she concludes that the person is a fit subject to continue in his or her regular employment, direct that the person be permitted to continue in that employment, if that is compatible with the requirements of subdivision (d), or may authorize the person to secure employment for himself or herself, <u>unless the court at the time of sentencing or committing has ordered that the person not be granted work furloughs</u>. . . .

"(c) If the work furlough administrator so directs that the prisoner be permitted to continue in his or her regular employment or educational program, the administrator shall arrange for a continuation of that employment or education, so far as possible without interruption. If the prisoner does not have regular employment or a regular educational program, and the administrator has authorized the prisoner to secure employment or education for himself or herself, the prisoner may do so, and the administrator may assist the prisoner in doing so. . . .

"(d) Whenever the prisoner is not employed or being educated and between the hours or periods of employment or education, the prisoner shall be confined in the facility designated by the board of supervisors for work furlough confinement unless the work furlough administrator directs otherwise. . . .

"  . . . . . . . . . . . . . . . . . . . . . .

"(g) In the event the prisoner violates the conditions laid down for his or her conduct, custody, education, or employment, the work furlough administrator may order the balance of the prisoner's sentence to be spent in actual confinement." (Emphases added.)

Under section 1208, then, the "placement" role of the trial court is limited to sentencing the person "to the county jail" if the "person is convicted of a misdemeanor" and imprisoning the person "in the county jail for nonpayment of a fine, for contempt, or as a condition of probation for any criminal offense." More precisely, the court sentences the person "into the custody of the sheriff, the director of a county department of corrections, or the chief

probation officer." The court does not direct the placement of the person into a work furlough facility[4] or to the custody of the work furlough administrator under the terms of section 1208.

No other statute deals expressly with the placement of persons into work furlough facilities. It has been suggested, however, that the general statute governing the granting of probation may provide the authority for a trial court to place a person into a private work furlough facility. Section 1203.1 states in part:

"The court or judge thereof, in the order granting probation, may suspend the imposing, or the execution, of the sentence and may direct that the suspension may continue for a period of time not exceeding the maximum possible term of the sentence, except as hereinafter set forth, and upon those terms and conditions as it shall determine. The court, or judge thereof, in the order granting probation and as a condition thereof may imprison the defendant in the county jail for a period not exceeding the maximum time fixed by law in the case . . . may fine the defendant in a sum not to exceed the maximum fine provided by law in the case; or may in connection with granting probation, impose either imprisonment in county jail, or fine, or both, or neither; shall provide for restitution in proper cases; and may require bonds for the faithful observance and performance of any or all of the conditions of probation.

" . . . . In counties or cities and counties where road camps, farms, or other public work is available the court may place the probationer in such a road camp, farm, or other public work instead of in jail; Section 25359 of the Government Code shall apply to probation and the court shall have the same power to require adult probationers to work, as prisoners confined in the county jail are required to work, at public work. Each county board of supervisors may fix the scale of compensation of the adult probationers in that county. In cases of probation the court may require as a condition of probation that the probationer go to work and earn money for the support of his or her dependents or to pay any fine imposed or reparation condition, to keep an account of his or her earnings, to report them to the probation officer and apply those earnings as directed by the court.

" . . . . . . . . . . . . . . . . . . . . . .

"The court may impose and require any or all of the above-mentioned terms of imprisonment, fine, and conditions, and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer, and that should the probationer violate any of the terms or conditions imposed by the court in the matter, it shall have authority to modify and change any and all such terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved. Upon the defendant being released from the county jail under the terms of probation as originally granted or any

_____

[4] Broadly stated "[a] trial court does not have jurisdiction to specify detention in a particular institution . . . ." (*People* v. *Graham* (1978) 83 Cal.App.3d 736, 745; see § 5054; *People* v. *Lara*, *supra*, 155 Cal.App.3d 570, 574-576; *People* v. *Thomas* (1976) 65 Cal.App.3d 854, 858; *People* v. *Fowler* (1976) 62 Cal.App.3d 904, 913-914.)

modification subsequently made, and in all cases where confinement in a county jail has not been a condition of the grant of probation, the court shall place the defendant or probationer in and under the charge of the probation officer of the court, for the period or term fixed for probation. . . ." (Emphases added.)[5]

"Trial courts are granted broad discretion under Penal Code section 1203.1 to prescribe conditions of probation" (*People* v. *Richards* (1976) 17 Cal.3d 614, 619); however, the "discretion is not boundless" (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 626). "In the first place, the authority is wholly statutory; the statute furnishes and limits the measure of authority which the court may thus exercise [citations]." *People* v. *Keller* (1978) 76 Cal.App.3d 827, 832; see *People* v. *Baumann* (1985) 176 Cal.App.3d 67, 76; *People* v. *Baker* (1974) 39 Cal.App.3d 550, 559.) The sentencing count's discretion "'must be impartial, guided by "fixed legal principles, to be exercised in conformity with the spirit of the law."'" *People* v. *Dominguez*, *supra*, 256 Cal.App.2d 623, 626-627; see *People* v. *Lara*, *supra*, 155 Cal.App.3d 570, 575; *People* v. *Beach* (1983) 147 Cal.App.3d 612, 620-623; *People* v. *Keller*, *supra*, 76 Cal.App.3d 827, 833; *People* v. *Baker*, *supra*, 39 Cal.App.3d 550, 559-560.)

Section 1203.1 authorizes a sentencing court to "imprison the defendant in the county jail" or "to place the probationer in a . . . road camp, farm, or other public work" operated by the county. Absent from this grant of authority is any reference to a work furlough facility or to a privately operated program. These express provisions for the detention of a person placed on probation impliedly preclude other types of placements under the terms of section 1203.1. (See *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196; *County of Alameda* v. *State Bd. of Equalization* (1982) 131 Cal.App.3d 374, 381; *Kaiser Steel Corp.* v. *County of Solano* (1979) 90 Cal.App.3d 662, 668.) A court has no authority to confine a person as a condition of probation unless a statute so provides. (*In re Frank* (1926) 79 Cal. 659, 660.)

The detailed requirements of section 1208 regarding work furlough facilities explain and circumscribe the more general "reasonable conditions" language of section 1203.1. The latter is to be read in the context of the former. (See *People* v. *Shirokow* (1980) 26 Cal.3d 301, 307; *People* v. *Caudillo* (1978) 21 Cal.3d 562, 585; *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 828.) Any other construction of section 1203.1 would emasculate the Legislature's directives in section 1208. (See 32 Ops.Cal.Atty.Gen. 48 (1950).)

Our construction of section 1203.1 in light of section 1208 addresses the Legislature's concerns of adequate personnel training standards, building standards, fire safety standards, and health standards, among other matters specified in section 1208. This is clearly what the Legislature had in mind when it amended section 1208 in 1987 (Stats. 1987, ch. 1054, § 1) to add the phrases "or private entities" and "or private entity" to the statute. As explained in the Legislative Counsel's Digest at the time of the 1987 amendment:

"Existing law authorizes the work furlough administrator of a county, with the approval of the board of supervisors, to enter into a contract with appropriate

---

[5] Government Code section 25359 provides:

"The board may provide for the working of prisoners confined in the county jail under judgment of conviction of misdemeanors, under the direction of a responsible person appointed by the sheriff, upon the public grounds, roads, streets, alleys, highways, firebreaks, fire roads, riding or hiking trails, or public buildings, or in such other places as are deemed advisable, for the benefit of the public."

public or nonprofit private agencies to provide a facility and certain services for inmates participating in a work furlough program.

"This bill would also allow the work furlough administrator of a county, with the approval of the board of supervisors, to enter into contract with a private entity. The bill would also require all privately operated work furlough facilities and programs to be under the jurisdiction of, and subject to the terms of a contract entered into with, the work furlough administrator. It would require each contract to include a provision whereby the private agency or entity agrees to operate the facility in compliance with all appropriate state and local building, zoning, health, safety and fire statutes, ordinances, and regulations and certain regulatory standards established by the Board of Corrections. It would require the private agency or entity to select and train its personnel in accordance with standards developed by the Board of Corrections for local correctional officers. It would provide for termination of a contract for failure to comply with the applicable laws and regulatory standards. It would also require all private work furlough facilities and programs to be inspected biennially by the Board of Corrections unless the work furlough administrator requests an earlier inspection and would require the private agency or entity to pay a fee to the board commensurate with the costs of the inspection and a fee commensurate with the cost of the initial review of the facility." (Emphasis added.)[6]

The committee reports contain similar language as to the effect of the proposed 1987 amendment. For example, the report of the Senate Committee on the Judiciary stated at the time of the 1987 legislation:

"This bill would authorize the use of private entities for work furlough programs, but would subject them to the authority of the county work furlough administrator as provided in the terms of their contracts. They would be required to comply with all appropriate building, zoning, health, safety and fire standards, and must meet minimum jail standards as established by the Board of Corrections. Failure to do so may result in termination of their contract."[7]

It does appear that in *In re Starr* (1986) 187 Cal.App.3d 1550, the trial court had directed the placement of a person into a private work furlough facility that was being operated without a contract with the county. The Court of Appeal, however, was not presented with the question of the propriety of the trial court's placement. Rather, it addressed the issue of whether "conduct credits" were available under the provisions of section 4019.[8] Since the *Starr* decision is devoid of analysis on the subject of a trial court's placement authority, we apply the rule that "'cases, of course, are not authority for propositions not there considered.'" (*People* v. *Belleci*

---

[6] "[I]t is reasonable to presume the Legislature's intent and meaning in amending a statute was that expressed in the Legislative Counsel's digest [citation]." (*Knighten* v. *Sam's Parking Valet* (1988) 206 Cal.App.3d 69, 77, fn. omitted.)

[7] "[I]t is well established that reports of legislative committees . . . are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465.)

[8] Section 4019 allows a credit against a person's period of confinement for assigned work and for "good conduct" as specified in the statute.

(1979) 24 Cal.3d 879, 888.) "[A]n opinion must be understood in the light of the facts and issues then before the court . . . ." (*Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1376; see *Valentine* v. *City of Oakland* (1983) 148 Cal.App.3d 139, 149.) Accordingly, we do not rely upon the *Starr* decision in determining the scope of a trial court's authority in placing a person in a private work furlough facility. (See *People* v. *Ceballos* (1974) 12 Cal.3d 470, 481; *Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 127-128, fn. 2; *Reed* v. *Dick* (1988) 200 Cal.App.3d 469, 480; *Community Cause* v. *Boatwright* (1987) 195 Cal.App.3d 562, 576.)

In answer to the question presented, therefore, we conclude that a state trial court does not have the authority to direct the placement of a person convicted of a crime into a private work furlough facility that is being operated without a contract with the county.

\* \* \* \* \*