TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-409 |
| of | : | |
| | : | January 10, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE ROSS JOHNSON, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a local public agency invest its deferred compensation plan funds in a credit union that has on its board of directors a member of the legislative body of the agency?

CONCLUSION

A local public agency may not invest its deferred compensation plan funds in a credit union that has on its board of directors a member of the legislative body of the agency.

ANALYSIS

State credit unions are regulated under the California Credit Union Law (Fin. Code, §§ 14000-15102) by the Commissioner of Corporations. (Fin. Code, §§ 14003, 14200.) They are generally managed by a board of directors (Fin. Code, § 14450) and various committees (Fin. Code, §§ 14550, 14453, 14456, 14600). A state credit union is a cooperative, conducting business for the "mutual benefit and general welfare of its members with the earnings, savings, benefits, or services of the credit union being distributed to its members as patrons." (Fin. Code, § 14002.) Every state credit union may accept deposits from local governments and political subdivisions thereof. (Fin. Code, § 14851.)

1. 95-409

Federal credit unions are regulated under the Federal Credit Union Act (12 U.S.C. §§ 1751-1795k) by the National Credit Union Administration Board. (12 U.S.C. §§ 1753, 1754.) They are managed by a board of directors, a supervisory committee and, if permitted by their bylaws, a credit committee. (12 U.S.C. § 1761.) A federal credit union is a "cooperative association organized . . . for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes" (12 U.S.C. § 1752) and may receive deposits from, among others, local governments and political subdivisions thereof (12 U.S.C. § 1757).

The question presented for resolution is whether a local public agency may invest its deferred compensation plan funds in a credit union that has on its board of directors a member of the agency's legislative body. We conclude that the agency may not invest such funds where a proscribed conflict of interests is present.

A local public agency may establish a deferred compensation plan for its employees under the terms of Government Code section 53213,[1] which provides:

> "Each local agency may establish for its officers and employees a deferred compensation plan. Participation in such plan shall be by written agreement between such officers and employees and the governing body of the local agency which shall provide for deferral of a portion of such officers' or employees' wages. Officers and employees of any local agency having a deferred compensation plan may authorize deductions to be made from their wages for the purpose of participating in such deferred compensation plan."

The "purposes motivating an employee to defer compensation are to secure supplemental income to himself or his survivors upon termination of employment through retirement, death, disability or resignation and to defer the taxability of income." (57 Ops.Cal.Atty.Gen. 534, 536 (1974).) "By deferring receipt of a portion of wages, the employee defers taxation on those wages until they are actually received, usually upon retirement when the employee is in a lower tax bracket." (*Herrick* v. *State of California* (1993) 149 Cal.App.3d 156, 159.) As we noted in our 1974 opinion:

> ". . . It is clear that the portion of the compensation which is paid into the deferred compensation plan represents funds which the public entity would have to pay out in salaries and would have thus segregated out of the mass of its general funds. These are funds which the employee as well as the governmental agency, pursuant to agreement, desire to have invested and are funds which both the governmental agency and the employee wish to take certain investment risks. Whether the risks bear fruit or not, whether the investment is ever made, the public agency remains in relatively the same position. Either it would pay these funds out in the form of compensation directly to the employee or it would take the funds relinquished to it by the employee and employ them, pursuant to agreement, in a way which all those party to the agreement hope will bring some benefit in the future and a lessening of a tax burden at

---

[1] Unless otherwise indicated, all section references hereafter are to the Government Code.

the present.  Nevertheless, the only person who would suffer by any loss in this investment is the employee, and not the public treasury generally, because for the portion of the funds invested, only the employee had the right to that sum of money. Obviously the public is not so vitally concerned with these funds (as distinguished from public funds on deposit), once the employee, being *sui juris*, elects to defer that portion of his compensation for this investment and retirement purpose."  (57 Ops.Cal.Atty.Gen., *supra*, 540-541.)

It is assumed for purposes of this opinion that the deferred compensation plan funds in question are held by a local agency under the terms of section 53213 and qualify for the deferment of income taxes, which requires that the funds and investment of such funds remain the property of the local agency.  (See 26 U.S.C. 457 (b)(6); 58 Ops.Cal.Atty.Gen. 129 (1975); 57 Ops.Cal.Atty.Gen., *supra*, 536.)

The funds of a local agency may be deposited and invested under the general terms of section 53635, which provide:

"As far as possible, all money belonging to, or in the custody of, a local agency, including money paid to the treasurer or other official to pay the principal, interest, or penalties of bonds, shall be deposited for safekeeping in state or national banks, savings associations or federal association, *credit unions*, or federally insured industrial loan companies in this state selected by the treasurer or other official having the legal custody of the money; or, unless otherwise directed by the legislative body pursuant to Section 53601, may be invested in the following . . . ."   (Italics added.)[2]

Section 53637, the focus of our opinion, additionally provides:

"The money shall be deposited in any bank, savings association, state or federal credit union, or federally insured industrial loan company with the objective of realizing maximum return, consistent with prudent financial management, *except that money shall not be deposited in any state or federal credit union if a member of the legislative body of a local agency, or an employee of the administrative office, manager's office, budget office, auditor-controller's office, or treasurer's office of the local agency, also serves on the board of directors, or any committee appointed by the board of directors, or the credit union committee or supervisory committee, of the state or federal credit union*."   (Italics added.)

We must construe the requirements of section 53637 in light of the provisions of section 53609, which expressly authorize the investment of deferred compensation plan funds.  Section 53609 states:

"*Notwithstanding the provisions of this chapter or any other provisions of this code*, funds held by a local agency pursuant to a written agreement between the agency

---

[2]Section 53601 governs the investment of surplus funds by a local agency.

and employees of the agency to defer a portion of the compensation otherwise receivable by the agency's employees and pursuant to a plan for such deferral as adopted by the governing body of the agency, may be invested in the types of investments set forth in Sections 53601 and 53602 of this code, and may additionally be invested in corporate stocks, bonds, and securities, mutual funds, savings and loan accounts, *credit union accounts*, life insurance policies, annuities, mortgages, deeds of trust, or other security interests in real or personal property.  Nothing herein shall be construed to permit any type of investment prohibited by the Constitution.

"Deferred compensation funds are public pension or retirement funds for the purposes of Section 17 of Article XVI of the Constitution."   (Italics added.)[3]

In applying these statutory provisions to the circumstances presented, we rely upon several well established principles of statutory interpretation.  "When interpreting a statute our primary task is to determine the Legislature's intent."  (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.)  "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislation purpose, i.e., the object to be achieved and the evil to be prevented by the legislation. [Citations.]"  (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.)  "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'"  (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.)  "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent."  (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

The authority of a local agency to invest its deferred compensation plan funds in credit union accounts was granted by the Legislature in 1971 (Stats. 1971, ch. 1629, § 2) when section 53609 was enacted.  In 1984 the Legislature amended section 53637 (Stats. 1984, ch. 659, § 5) to allow the deposit of all local funds in credit union accounts subject to the prohibition against the holding of a conflict of interests.

At the time of the enactment of section 53609 in 1971, numerous restrictions were placed upon the deposit and investment of local public funds.  (See Stats. 1967, ch. 1026, § 1; Stats. 1949, ch. 81, § 1.)  The Legislature imposed different requirements for the deposit and investment of local funds needed for immediate use, those for future use, and those for employee deferred compensation plan use.  (See 57 Ops.Cal.Atty.Gen., *supra*, at 539-542.)  By using the phrase "[n]otwithstanding the provisions of this chapter or any other provision of this code" (see *People* v. *Superior Court (Hubbard)* (1994) 230 Cal.App.3d 287, 296; *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678; 78 Ops.Cal.Atty.Gen. 58, 61 (1995)) and granting specific investment authority for local agencies in section 53609, the Legislature broadened the investment opportunities available

---

[3]Section 17 of article XVI of the Constitution prohibits the state from loaning the state's credit and delineates the responsibilities of the retirement board of a public pension or retirement system.

for deferred compensation plan funds. Essentially the Legislature authorized the deposit of such funds in riskier investments that potentially could produce greater returns for employees. We do not believe that investing in a credit union where a conflict of interests exists constitutes the type of "riskier" opportunities the Legislature contemplated. We have found no statutory language indicating the Legislature intended to condone the holding of a conflict of interests when local agency funds are invested.

The limitation language of section 53637 ("money shall not be deposited in any state or federal credit union if a member of the legislative body . . . serves on the board of directors . . . of the . . . credit union") does not prevent local agencies from investing deferred compensation plan funds in state or federal credit unions. Such investment is permissible in any credit union where the prohibited dual relationship is absent. We thus believe that the terms of sections 53609 and 53637 may be harmonized and given full effect. The purposes of the two statutes are both served by allowing the investment of deferred compensation plan funds in credit union accounts as long as the proscribed holding of a conflict of interests is not present.

Moreover, we have examined in detail the legislative history of the 1984 amendment of section 53637, which added the conflict of interests prohibition. The purpose of the prohibition was explained in a letter dated May 21, 1984, from the sponsor of the legislation, the California Credit Union League, to the author of the legislation, Assemblyman Alister McAlister:

"Enclosed are amendments proposed by the California Bankers Association. These amendments would remove any opposition to . . . AB 628 . . . .

"The concern raised by the California Bankers Association was that if a local agency fiscal officer were a member of the board of directors or of another committee of the credit union, he or she might . . . direct funds to the credit union with less reflection on the merits of the investment [than] would otherwise be the case. To address their concern, we agreed to the attached amendments to avoid any possible problems in this area.

"The amendments would avoid a conflict of interest by prohibiting investment in a credit union by a local agency when the fiscal officer sits on the board of directors or other specified committees of the credit union."

It must be conceded that the best interests of a local agency when investing its funds may not be identical to the best interests of a particular credit union. Thus a person making investment decisions for a local agency while serving on a credit union's board of directors or committee would necessarily be faced with divided loyalties. (See *People ex rel. Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 641-642; 76 Ops.Cal.Atty.Gen. 81, 82-83 (1993).) Obviously the Legislature intended to protect a local agency's funds from improvident investment decisions in such circumstances.

Did the Legislature intend the same protection for a local agency's investment of deferred compensation plan funds? What may be in the best interests of the employees of a local agency when deferred compensation funds are being invested by the agency may not be in the best interests of a particular credit union. Avoiding a conflict of interests would appear as important for investing a public agency's deferred

compensation plan funds as its other funds. We apply the requirements of section 53637 to the investment of deferred compensation plan funds so that "the object to be achieved and the evil to be prevented by the legislation" may be effectuated.[4]

We conclude that a local government agency may not deposit its deferred compensation plan funds in a credit union if a member of the legislative body of the agency serves on the credit union's board of directors.

* * * * *

---

[4]Because of a slight difference in the definition of a "local agency" for purposes of section 53609 (see § 53600) and section 53637 (see § 53630, subd. (a)), a particular local agency may not be subject to the conflict of interests proviso when investing its deferred compensation plan funds. However, in such situation, the agency would need to examine the conflict of interests prohibition of section 1090 to determine whether it would be applicable. An analysis of the latter statute is beyond the scope of this opinion.